IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1057

Filed 3 December 2024

Mecklenburg County, No. 17CRS230495

STATE OF NORTH CAROLINA

v.

PRINCE ALI CHAMBERS

Appeal by Defendant from judgment entered 17 March 2023 by Judge Louis A. Trosch, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 September 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Phillip T. Reynolds, for the State-Appellee.*
>
> *Mark Hayes for Defendant-Appellant.*

COLLINS, Judge.

Defendant Prince Ali Chambers appeals from judgment entered upon a jury's guilty verdicts of two counts of trafficking in cocaine. Defendant argues that he received ineffective assistance of counsel because his attorney did not object to the admission of evidence gathered during a car stop. Alternatively, Defendant argues that the trial court plainly erred when it denied his motion to suppress and admitted the evidence obtained during the car stop. Because reasonable suspicion existed to support the stop, the trial court did not err, much less plainly err, by denying

Defendant's motion to suppress, and Defendant did not receive ineffective assistance of counsel by virtue of the fact that his attorney did not object to the admission of evidence gathered during the stop.

## I.  Background

Defendant was indicted on 19 November 2018 for two counts of trafficking in drugs by (1) "possess[ing] 400 grams or more of cocaine" and (2) "transport[ing] 400 grams or more of cocaine."

On 10 March 2023, defense counsel filed a motion to suppress evidence seized during a car stop in which Defendant was a passenger and a motion to suppress evidence seized during a search of Defendant's house.  The trial court held a hearing on both motions on 13 March 2023.  During that hearing, defense counsel elected not to proceed fully with the motion to suppress the evidence seized during the car stop. Defense counsel withdrew his arguments regarding the detention of Defendant and regarding the search of the car, stating, "We're just talking about whether [the officer] had probable cause right now to stop this [car].  That's the end of the inquiry."

The trial court then stated, "That's all – your argument is just that they never should've stopped the vehicle," and defense counsel replied, "Yes."  The trial court announced that defense counsel had elected not "to proceed with any arguments that the actual stop of the [car], or the circumstances that led to the [car] being searched, were unconstitutional.  Rather, [defense counsel] limited his arguments to the stop of the [car], which was supported by the search warrant."  The trial court then denied

Defendant's motion to suppress the evidence gathered during the car stop. The case proceeded to trial.

The evidence at trial tended to show that in August 2017, a known, reliable confidential informant identified Defendant to Charlotte Mecklenburg Police Department ("CMPD") detectives as someone "selling heroin . . . on the streets of Charlotte." The confidential informant showed detectives where Defendant lived at 4425 Stonefield Drive and identified three vehicles that Defendant had used to distribute narcotics: a red Ford Explorer, a black Jeep Wrangler, and a black Range Rover. On 4 August 2017, detectives began surveilling Defendant's residence. They saw Defendant and Travis Johnson coming and going from the residence and saw a black Range Rover and a red Ford Explorer parked in the driveway. Detectives then saw Johnson drive the black Range Rover to a Cookout restaurant and conduct a "suspected narcotic transaction with an individual in the Cookout parking lot." Detectives conducted a traffic stop of the black Range Rover and positively identified Johnson as the driver; Johnson told detectives that Defendant was his brother and that they lived together at the 4425 Stonefield Drive residence.

On 11 August 2017, detectives again surveilled Defendant's residence. Around 10:00 a.m., Detective Stephanie Browder saw Defendant walk out of his residence with a full trash bag and place the bag in the trash can on the curb at the end of Defendant's driveway. Approximately twenty minutes later, Detective Browder saw Johnson drive away from the residence in the black Jeep Wrangler and drive to a

"well-known drug transaction location"; detectives saw Johnson meet with several different individuals in the parking lot of a supermarket and loiter in the parking lot, and then witnessed Johnson "rolling [a] marijuana joint in the vehicle." Based on these observations, Detective Todd Hepner stopped the Jeep and conducted a probable cause search based on the odor of marijuana coming from the Jeep. He seized eight grams of suspected heroin, seven grams of marijuana, a set of digital scales, and a .40 caliber firearm from Johnson.

That same day, another detective conducted a trash pull at Defendant's residence. From the trash can the detective pulled a sandwich bag with a white powdery residue in it, corner baggies with white residue in them, and a quart-sized vacuum-sealed bag with marijuana odor and residue inside it. Based on all of the foregoing evidence, on 11 August 2017, detectives obtained a search warrant for Defendant's residence and his person to search for "controlled substances including heroin and evidence of ownership, access, possession, and control" and "other evidence of drug sales or possession."

After the search warrant was issued, but before it was executed on the residence or Defendant's person, Detective Browder saw a black sedan pull into the driveway of Defendant's residence. Detective Browder watched Defendant walk outside the residence with a box, place the box in the backseat of the driver's side of the car, and return into the residence. Defendant reemerged from the residence with a blue bag, placed the bag in the backseat of the driver's side of the car, and got into

the front passenger's seat. The car pulled away from the residence with Defendant inside; Detective Browder began following the car.

Detective Browder relayed all of these observations to other surveilling officers via radio, one of whom was Detective Hepner. Detective Hepner—aware that a search warrant had already been issued to search Defendant's person—located and stopped the car about a half of a mile from Defendant's residence. As soon as the car was stopped, Defendant exited the car and approached Detective Hepner's vehicle. Detective Hepner handcuffed Defendant and waited for backup. Detective Browder arrived on scene, saw the car in which Defendant had been a passenger, "[c]onfirmed that [the car] was the same one that [she] was keeping eyes on," and saw that Defendant had gotten out of the car. She also saw that the box and blue bag that she had witnessed Defendant place in the car were still located in the backseat of the car. She notified Detective Hepner that it "was the correct vehicle, the correct box, and blue bag that [she] observed." Detective Hepner then walked his K-9 around the car, and the K-9 alerted to the odor of narcotics on the driver's side of the car in between the driver's and rear passenger's doors. Detective Hepner searched the car and found 1,613 grams of cocaine in the blue bag and a kilo press in the box in the backseat of the car. He found flip phones on Defendant's person. At trial, defense counsel did not object to the State's evidence obtained from the car stop.

The jury found Defendant guilty of trafficking cocaine by transportation and of trafficking cocaine by possession. The trial court sentenced Defendant to 175 to 222

months' imprisonment. Defendant gave timely written notice of appeal on 20 March 2023.

## II. Discussion

Defendant argues that he received ineffective assistance of counsel because his defense counsel did not object to the admission of evidence gathered during the car stop. Alternatively, Defendant argues that the trial court plainly erred when it denied his motion to suppress and admitted the evidence obtained during the car stop.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel, which necessarily includes the right to effective assistance by counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland* sets forth a two-part test for ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) "the defendant must show that the deficient performance prejudiced the defense" by showing that "'counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable*.'" *State v. Braswell*, 312 N.C. 553, 562 (1985) (quoting *Strickland*, 466 U.S. at 687). The Supreme Court further elaborated on the prejudice prong, explaining that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Under North Carolina's plain error standard, we have held:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518 (2012) (quotation marks, brackets, and citations omitted). Thus, plain error should only be found where "the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done" or "where the error is grave error which amounts to a denial of a fundamental right of the accused . . . ." *State v. Odom*, 307 N.C. 655, 660 (1983) (quotation marks, brackets, and citation omitted).

Our Court in *State v. Lane* examined and compared "the plain error standard and ineffective assistance of counsel test by this Court [and] our Supreme Court." 271 N.C. App. 307, 313-16 (2020). We explained that "[p]rejudice under plain error requires that the *trial court's* error have had a 'probable impact' on the jury's finding of guilt" such that it "'tilted the scales' and caused the jury to reach its verdict convicting the defendant." *Id.* at 313 (citations omitted). For plain error to be found, "it must be probable, not just possible, that . . . the jury would have returned a different verdict." *Id.* (citations omitted). "In contrast, prejudice under the ineffective assistance of counsel test requires a showing of 'reasonable probability' that, 'but for

*counsel's* unprofessional errors, the result of the proceeding would have been different.' A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citations omitted). "Under the reasonable probability standard, a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* (quotation marks and citations omitted). However, the defendant does need to demonstrate that "at least one juror would have struck a different balance." *Wiggins v. Smith*, 539 U.S. 510, 537 (2003) (citation omitted). Under this reasonable probability standard, the "likelihood of a different result must be substantial, not just conceivable" and "it is something less than that required under plain error." *Lane*, 271 N.C. App. at 314 (quotation marks and citations omitted). Despite the differences in prejudice standards for the ineffective assistance of counsel claim and the plain error claim, both require the defendant to first show error. *See id.* at 313-16.

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68 (2011) (citation omitted). "Unchallenged findings of fact are binding on appeal." *State v. Fizovic*, 240 N.C. App. 448, 451 (2015) (citation omitted). "We review the trial court's conclusions of law on a motion to suppress de novo." *State v. Ladd*, 246 N.C. App. 295, 298 (2016) (italics and citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that

of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33 (2008) (quotation marks, italics, and citations omitted).

The Fourth Amendment protects individuals "against unreasonable searches and seizures," U.S. Const. amend. IV, and the North Carolina Constitution provides similar protection. *See* N.C. Const. art. I, § 20. "A traffic stop is a seizure even though the purpose of the stop is limited and the resulting detention quite brief, . . . [and] [t]raffic stops have been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1 (1968)." *State v. Styles*, 362 N.C. 412, 414 (2008) (quotation marks and citations omitted). "Under *Terry* and subsequent cases, a traffic stop is permitted if the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Id.* (quotation marks and citation omitted). "Reasonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence' . . . [and] is satisfied by 'some minimal level of objective justification.'" *Id.* (quotation marks and citations omitted). This Court requires that a stop "be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441 (1994) (citation omitted). Moreover, we "must consider 'the totality of the circumstances—the whole picture'—in determining whether a reasonable suspicion . . . exists." *Id.* (citation omitted).

Here, the trial court made the following findings of fact that are supported by

competent evidence:

> 5. The defendant withdrew his argument in the motion to suppress regarding the temporary detention of the defendant during the K9 sniff of the vehicle. Therefore, the Court only addressed whether there was probable cause within the search warrant, and whether there was reasonable suspicion to stop the vehicle pursuant to that search warrant.

> 6. Within the search warrant, the following information was given:

>> a. During the month of August 2017, a confidential reliable informant provided information to Charlotte-Mecklenburg Police Detectives on an individual identified as [Defendant] who was selling heroin on the streets of Charlotte.

>> b. This confidential informant had a history of providing reliable information to the police department. The confidential informant had been working with the police for over five years.

>> c. The confidential informant showed the detectives where [Defendant] resides . . . and advised that [Defendant] would operate a red Ford Explorer, a black Jeep Wrangler, or a black Range Rover to distribute narcotics.

>> d. While conducting surveillance at the given address, detectives observed the black Range Rover and red Ford Explorer in the driveway of the house.

>> e. Detectives saw both [Defendant] and Travis Johnson walk in and out of the residence.

>> f. Detectives observed Travis Johnson enter the black Range Rover and conduct a suspected hand-to-hand narcotics transaction with an individual at the Cookout on West Sugar Creek Road in Charlotte.

g. Detectives conducted a traffic stop on this vehicle and identified Travis Johnson as the person driving the black Range Rover. He told officers he lived with his brother on Stonefield Drive.

h. On August 11, 2017, officers observed Travis Johnson and [Defendant] walk in and out of the residence at 4425 Stonefield Drive.

i. On that date, detectives saw Travis Johnson leave in the black Jeep Wrangler and drive to [a supermarket]. Officers eventually made contact with Johnson. Officers did a probable cause search of the vehicle and found 8 grams of suspected heroin, 7 grams of suspected marijuana, a set of digital scales, and a Smith and Wesson .40 caliber firearm.

j. On that same date, officers conducted a trash pull at [Defendant's] residence. In the trash, detectives located a quart size vacuum sealed bag that had the odor and residue of marijuana on it. Detectives also located a sandwich baggie with white powdery residue in it. Detectives also located corner baggies with a white residue.

. . . .

10. Detective Hepner with the Charlotte-Mecklenburg Police Department stated that he received information that [Defendant] was leaving [his] residence as the passenger in a black Nissan sedan.

11. Detective Hepner stated he was nearby and saw the vehicle described.

12. Detective Hepner stated he confirmed he was behind the correct vehicle and based on the search warrant for [Defendant], he effectuated a traffic stop on the vehicle.

13. [Defendant] was identified as the passenger in that vehicle.

- 11 -

. . . .

The trial court then concluded as a matter of law that "the search warrant for [Defendant's residence] and [Defendant] that was applied for and executed on August 11, 2017 contains sufficient probable cause, and therefore Detective Hepner had reasonable suspicion to pull over the vehicle containing [Defendant]."

The trial court's supported findings of fact show that: a known, reliable confidential informant provided information to CMPD detectives about Defendant and his history of selling drugs in Charlotte; the confidential informant provided CMPD detectives with reliable information regarding the house where Defendant lived with Johnson and the types of vehicles from which Defendant distributed narcotics; CMPD detectives saw Defendant entering and exiting the house and driving the vehicles identified by the confidential informant; CMPD detectives saw Johnson conduct narcotics sales from the vehicles identified by the confidential informant; CMPD detectives searched Johnson and discovered marijuana, heroin, digital scales, and a firearm; CMPD detectives conducted a trash pull from Defendant's house, which contained bags with traces of marijuana and a white, powdery substance; and, following the discovery of drugs and drug paraphernalia on Johnson and the trash pull at Defendant's house, Detective Hepner received information that Defendant was leaving the home in a specific car. Detective Hepner was also aware that a search warrant had been issued for Defendant's person and his residence. Moreover, the evidence shows that Detective Browder saw Defendant

walk out of his residence while holding a box, place that box in the back seat of the car, walk back into his residence wherein he retrieved a blue bag, walk back to the car and place the blue bag in the back seat of the car, and then get into the front passenger seat of the car before the car left the driveway.

This information amounts to "specific and articulable facts" that support Detective Hepner's stop of the car in which Defendant was traveling. *Watkins*, 337 N.C. at 441. These facts provided Detective Hepner with "reasonable, articulable suspicion that criminal activity [was] afoot," *Styles*, 362 N.C. at 414 (citation omitted), and, when considering "the totality of the circumstances" here, *Watkins*, 337 N.C. at 441, we determine that reasonable suspicion existed to support the stop of the car.

## III. Conclusion

The trial court's findings of fact are supported by competent evidence and the findings of fact support the trial court's conclusion of law that there was "reasonable suspicion to pull over the vehicle containing [Defendant]."

NO ERROR.

Judges TYSON and GRIFFIN concur.